IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 1:10-cr-466-SAL-3 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| LAMATAVOUS REGTEZ COLLINS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court pursuant to Defendant Lamatavous Regtez Collins'
(Defendant) Motion for Compassionate Release, ECF No. 1710, appointed counsel's
Memorandum in Support, ECF No. 1722, the government's response in opposition, ECF No.
1731, Defendant's reply, ECF No. 1733, and Supplemental Letter, ECF No. 1735. After
carefully analyzing the arguments raised by the parties in accordance with the relevant facts and
law, the court denies Defendant's motion for the reasons below.

**RELEVANT BACKGROUND**

On August 20, 2010, the Grand Jury charged Defendant and twelve co-defendants in a
twenty-eight-count Superseding Indictment for their involvement in a drug trafficking
conspiracy that spanned about ten years.[1] [ECF No. 345 at 2.] Defendant was specifically
charged with one count of conspiracy to possess with intent to distribute and distribution of five
kilograms or more of powder cocaine, fifty grams or more of cocaine base (commonly known as
"crack cocaine"), and a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1),

---

[1] Defendant was one of fifteen individuals initially charged by the Grand Jury in a twenty-six-count
Indictment on April 21, 2010. [ECF No. 256.]

841(b)(1)(A), and 841(b)(1)(D), all in violation of 21 U.S.C. § 846 (Count 1); one count of intent to distribute and distribution of fifty grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 9); and two counts of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(1) and 924(c)(1)(A)(iii) (Counts 27 and 28). *Id*. at 2-3, 6, 14-15.

On May 13, 2011, after a four-day trial, a jury found Defendant guilty of conspiracy to distribute five kilograms or more of powder cocaine and a detectable quantity of marijuana (Count 1). The jury was deadlocked over Defendant's culpability as to the crack cocaine. [ECF No. 720 at 1-3.] The jury was also deadlocked as to Defendant's intent to distribute and distribution of crack cocaine (Count 9) and one of the two counts of possession of a firearm in furtherance of a drug trafficking crime (Count 27). *Id*. at 3-4. The jury found Defendant not guilty as to the remaining count of possession of a firearm (Count 28). *Id*. at 4. On September 27, 2011, Defendant was sentenced to a term of imprisonment of 360 months.[2] [ECF No. 898 at 1-2.] On January 28, 2016, the court later reduced Defendant's sentence to 292 months pursuant to 18 U.S.C. § 3582(c)(2) and the U.S. Sentencing Commission's Amendment 782, which retroactively lowered drug sentences by revising the drug and chemical quantity tables that factor into sentencing calculations.[3] [ECF No. 1377 at 1-2]; U.S.S.G. § 1B1.10 comment n.6.

The Federal Bureau of Prisons (BOP) initially designated Defendant to the high-security U.S. penitentiary Big Sandy. [ECF No. 1710-1 at 3.] In 2012, Defendant saved the life of a

---

[2] The court calculated Defendant's sentencing guidelines range to 360 months to life imprisonment, based on a total offense level of 40 and a criminal history category of III. [ECF No. 915 at 26 n.8; ECF No. 938 at 70.]

[3] Amendment 782 reduced the multiplier to convert quantities of crack cocaine into an equivalent amount of marijuana from 20 kilograms to 3,571 grams per gram of crack cocaine. In effect of Amendment 782, Defendant's total offense level decreased to 38 and resulted in a new guidelines range of 292 to 365 months. [*See* ECF No. 1367 at 1]; 2009 U.S.S.G. Sent'g Table.

correctional officer who had choked on his food. *See id*. at 3-4. Because Defendant consequently received threats to his safety by other inmates, *id*. at 4, and because of his actions that day, *id*. at 5, the BOP moved Defendant to a medium-security facility, FCI Manchester Medium, where Defendant continues to serve his term of imprisonment.[4]

On March 25, 2022, Defendant filed this Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) pro se. [ECF No. 1710.] The court appointed counsel for Defendant, who filed a supplemental Memorandum in Support. [ECF No. 1722.] The government responded in opposition to Defendant's request for compassionate release, ECF No. 1731. Defendant subsequently replied to the government's response, ECF No. 1733, and filed a Supplemental Letter, ECF No. 1735, and additional documents in support of release, ECF No. 1749.

## STANDARD OF REVIEW

Courts may not modify a sentence once it has been imposed, with few exceptions. 18 U.S.C. § 3582(c). One exception is compassionate release, as amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A), which states that, upon motion of either the Director of the BOP or a criminal defendant, a court may modify the defendant's sentence if "extraordinary and compelling reasons warrant such a reduction," the reduction is "consistent with applicable policy

---

[4] To date, Defendant has served about 148 months in prison—just over half of his sentence—and is set to be released in or around February 2031. *See Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited May 8, 2023) (search by BOP Register Number: 20970-171).

statements issued by the Sentencing Commission,"[5] and the 18 U.S.C. § 3553(a) sentencing factors merit a reduction. 18 U.S.C. § 3582(c)(1)(A).

If a court finds extraordinary and compelling reasons, "it must consider the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The factors outlined in § 3553 include, in relevant part: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the sentencing range under the Sentencing Guidelines; any pertinent policy statement issued by the Sentencing Commission; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

## DISCUSSION

Defendant's request for compassionate release cites his concerns over serious illness from the COVID-19 pandemic, quick-thinking actions to save the life of a correctional officer who was choking, rehabilitation, and his mother's medical and healthcare needs as "extraordinary and compelling reasons" warranting release from prison. [*See* ECF No. 1710; ECF No. 1722.] Defendant also asserts that his § 3553(a) factors warrant a reduction in sentence

---

[5] The only policy statement that addresses the parameters of "extraordinary and compelling reasons" to warrant a reduction in sentence is § 1B1.13, yet its "'very first sentence . . . constrains the entire policy statement to motions filed solely by the BOP,' and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)); *see also* U.S.S.G. § 1B1.13 cmt. n.4 ("A reduction *under this policy statement* may be granted only upon motion by the Director of the Bureau of Prisons.") (emphasis added). Yet "[t]hat does not leave Guideline § 1B1.13 without practical import. The existing policy statement continues to govern BOP-filed motions for compassionate release. . . .And as [] district courts held here, it remains helpful guidance even when motions are filed by defendants." *McCoy*, 981 F.3d at 282 n.7 (citing cases).

because he has already served "substantial time" in custody, and he is at a "low" risk of recidivism. [ECF No. 1722 at 16 (citing Defendant's "Recidivism Risk Assessment"); *see also* ECF No. 1749-1 at 1, indicating a reduced general recidivism score of 22 down from 27.] The government, however, contends none of Defendant's proffered reasons warrant early release from prison and that Defendant's § 3553(a) factors do not support early release because of the seriousness of his offense, pretrial bond violations, and continued disciplinary infractions in prison. [ECF No. 1731 at 1, 20.] Because Defendant has exhausted his administrative remedies, [ECF No. 1710-1 at 1-5], this court turns to the merits of Defendant's motion.

## I.     Defendant's concerns over the COVID-19 pandemic

Defendant has not established an extraordinary and compelling reason for compassionate release based on the COVID-19 pandemic. In analyzing concerns over the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [the disease] *and* a particularized risk of contracting the disease at his prison facility." *United States v. Hargrove*, 30 F.4th 189, 196 (4th Cir. 2022) (emphasis added) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)).

Defendant's pro se Motion for Compassionate Release does not assert any concern about the COVID-19 pandemic,[6] *see* ECF No. 1710, and his appointed counsel's Memorandum in Support only generally addresses Defendant's concerns in a footnote, stating that Defendant "faces a serious present danger of illness or even death from incarceration" from COVID-19 but

---

[6] However, Defendant does attach to his Motion the paperwork surrounding his administrative request for compassionate release to the prison warden, where he expressed his concerns about the COVID-19 pandemic's threat to his health, vaguely contending his "medical condition" placed him at "high risk of catching the virus a second time." [ECF No. 1710-1 at 2.] The warden rejected Defendant's health concerns, citing its "extraordinary measures" to contain the spread of COVID-19. *Id*. at 5.

5

not specifying what ailment Defendant suffers from. [*See* ECF No. 1722 at 15 n.4.] The government explains that Defendant has hypertension, though it asserts that Defendant's hypertension is not an extraordinary and compelling reason for compassionate release because Defendant is fully vaccinated, his hypertension is "appropriately managed" in prison, and the BOP has taken "significant measures" to mitigate the spread of the virus. [ECF No. 1731 at 2-5, 10-18.] The court agrees.

According to the Centers for Disease Control and Prevention (CDC), individuals with hypertension are more likely to suffer severe illness from COVID-19. *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 8, 2023). But as the government acknowledges, there are several factors that weigh against finding that Defendant has a particularized susceptibility to COVID-19. First, there is no evidence that Defendant's hypertension is not well managed in prison.[7] In addition, although Defendant stated that he has previously contracted COVID-19, he does not contend that he suffers any lingering or long-term side effects from the disease. Moreover, like almost all inmates at FCI Manchester Medium,[8] Defendant has been fully

---

[7] Defendant is forty-four-years old, which does not solely "create a materially elevated risk of hospitalization or death due to COVID-19." *United States v. Lumpkin*, No. 2:12cr192, 2020 WL 7123109, at *2 (E.D. Va. Dec. 4, 2020). Although the CDC recognizes the risk of severe illness from COVID-19 increases with age, it nonetheless focuses on adults 50 years and older. *See COVID-19 Recommendations for Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/aging/covid19/index.html (last reviewed May 8, 2023). Similarly, the United States Sentencing Commission notes as "extraordinary and compelling" the age of a defendant who "is at least 65 years old," "experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least ten years or 75 percent of his or her term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.1(B). *See, e.g.*, *Lumpkin*, 2020 WL 7123109, at *2 (finding forty-three-year-old defendant not particularly susceptible to COVID-19); *United States v. Dunlap*, No. PJM 01-97, 2020 WL 5096723, at *4 (D. Md. Aug. 28, 2020) ("[W]hile the Court recognizes that risk for severe illness from COVID-19 increases as one ages, being fifty-five by itself is not an 'extraordinary and compelling reason' for release.").

[8] All or most inmates are vaccinated at FCI Manchester, across both its medium-security facility and its camp, which critically mitigates the spread of COVID-19 at the facility. *See BOP COVID-19 Statistics,* FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited May 8, 2023); *FCI*

vaccinated against COVID-19. Any risk Defendant faces from COVID-19 has been lowered over the past two years because of the widespread availability of the COVID-19 vaccine and is therefore not an extraordinary and compelling reason for compassionate release. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); *also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Nor has Defendant demonstrated a particularized risk of contracting COVID-19 at FCI Manchester Medium, where he is now incarcerated. There are currently no positive test results among inmates or BOP staff. *BOP COVID-19 Statistics*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited May 8, 2023). Based on these statistics, the BOP qualifies FCI Manchester Medium's operations at a Level 1, which signifies the medical isolation rate is less than 2%, the facility vaccination rate is greater than 65%, and community transmission is less than 100 per 100,000 over the last seven days. *See COVID-19 Coronavirus: Modified Operational Levels*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 8, 2023); *COVID-19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited May 8, 2023). Accordingly, the court determines that there is no particularized risk at Defendant's place of imprisonment currently.

---

*Manchester*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/man/ (last visited May 8, 2023) (comparing report of 1,066 inmates vaccinated with 1,051 total inmates at FCI Manchester).

## II.    Defendant's heroism while incarcerated

Defendant also highlights his life-saving actions in prison as a factor supporting early release. In 2012, while serving his sentence at Big Sandy, Defendant saved the life of a correctional officer who had choked on his food. [ECF No. 1710 at 1; ECF No. 1710-1 at 3-4; ECF No. 1722 at 1-2.] The BOP rejected Defendant's request to the warden for early release from prison on these same grounds, reasoning that Defendant's actions resulted in his transfer to a "lesser security facility." [ECF No. 1710-1 at 5.] The Warden concluded, "[W]hile acknowledging [Defendant's] actions indeed saved [the correctional officer's] life, it does not warrant early release from prison." *Id*. In its response in opposition, the government also agrees that Defendant received an adequate benefit for his actions by his transfer from a high-to-medium-security facility. [ECF No. 1731 at 20.] The court recognizes that Defendant placed his own life in danger to save the correctional officer and commends him for his act of bravery.

Yet district courts do not grant requests for compassionate release based on a single heroic act by itself. In *United States v. Riley*, for example, a court in the District of South Carolina granted a twelve-month reduction in the defendant's sentence. No. 3:12-cr-251-JFA, 2022 WL 3354700, at *10 (D.S.C. Aug. 12, 2022). In exercising its discretion to determine whether a sentence modification was appropriate, the court recognized that the defendant performed life-saving measures on a fellow inmate while incarcerated. *Id*. This alone, however, was not the reason for his reduction in sentence. The court primarily relied on the fact that the defendant's mandatory minimum sentence would be lower if he was sentenced today because of changes under the First Step Act of 2018. *Id*. at *9-10. Still, the § 3553(a) factors counseled the court against a reduction greater than twelve months. *Id*. at *10.

8

In another case, a court in the District of Columbia granted compassionate release to a defendant who received a "highly unusual level of support" from several correctional officers who described him as a "model inmate," who "routinely put the needs and safety of BOP staff and inmates before his own[] in order to help prevent violent unrest within the prison community." *United States v. Greene*, 516 F. Supp. 3d 1, 25 (D.D.C. 2021). There, the defendant had talked down a group of rioting prisoners who were about to take the lives of two correctional officers. *Id*. at 7-8. These circumstances not only highlighted the defendant's rehabilitation, but also his lack of dangerousness to the community—a factor for consideration when determining whether compassionate release satisfies the purposes of sentencing under 18 U.S.C. § 3553(a). *See id*. at 25. The court had first determined that the defendant's advanced age, lengthy period of nearly fifty years in prison, and age-related deterioration in health served as extraordinary and compelling reasons that warranted his release.[9] *Id*. at 24. Again, the defendant's heroic actions served as just one factor, among many, that weighed in favor of relief.

Here, unlike in *Riley*, Defendant has already received a reduction in his sentence pursuant to changes in sentencing law under Amendment 782. [*See* ECF No. 1377 at 1-2.] And, unlike in *Greene*, Defendant's age, health, and COVID-19 concerns are not extraordinary and compelling, as explained above. Moreover, the court in *Greene* characterized the defendant's heroic actions, in part, as showing his rehabilitation. Here, Defendant's rehabilitation alone does not constitute an extraordinary and compelling reason to merit relief.

### III.    Defendant's rehabilitation

---

[9] These characteristics, the court noted, were consistent with the policy statement explained by the United States Sentencing Commission under Sentencing Guidelines Manual § 1B1.13(1)(B), (2)-(3), which along with extraordinary and compelling reasons, allow a reduction in sentence if the defendant is at least seventy years old, has served at least thirty years in prison, and is not a danger to the safety of any other person or to the community. *Greene*, 516 F. Supp. 3d at 22-24.

Along with the life-saving actions Defendant performed in 2012, Defendant makes the case that his rehabilitation during his time in prison warrants early release. Defendant highlights the BOP's finding that Defendant is at low risk of recidivism, his completion of many courses and trainings, and his achievements in his work at a UNICOR factory. [ECF No. 1722 at 12-13; ECF No. 1722-5 at 4-5; ECF No. 1722-6 at 1.] Furthermore, Defendant has provided the court with his post-release plans, including a promise of employment, to, as his wife describes in a letter to the court, "ensure that none of [Defendant's] bad decisions [] resurface once [he] is given the opportunity at redemption." [ECF No. 1722-11 at 1.] Meanwhile, the government contends that Defendant's several disciplinary infractions,[10] the last of which occurred in 2020, undermine his positive conduct. [ECF No. 1731 at 6-7.]

Notwithstanding Defendant's prior disciplinary infractions, the court applauds the defendant's rehabilitation. But "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" to warrant a sentence reduction. 28 U.S.C. § 994(t); *see, e.g.*, *Riley*, 2022 WL 3354700, at *2 (citing 28 U.S.C. § 994(t)). At the same time, as the Fourth Circuit Court of Appeals explained in *United States v. McCoy*, "there is no indication that successful rehabilitation efforts may not be considered as one among other factors" warranting a reduced sentence under § 3582(c)(1)(A). 981 F.3d 271, 286 n.9 (4th Cir. 2020). So far, the court has yet to find other extraordinary and compelling factors to warrant compassionate release.

### IV.    Defendant's request to tend to his mother's medical and healthcare needs

---

[10] Defendant's disciplinary infractions include the possession of an unspecified unauthorized item, multiple instances of possession of a cellphone, possession of rope and street clothes that the BOP opined could have been used to make an escape, and insolent behavior toward a staff member. [ECF No. 1731 at 6-7.] These violations resulted in the loss of Defendant's privileges and good time credit. *Id*. at 7.

Finally, Defendant conveys his worry over his aging mother, providing medical records to the court to demonstrate her affliction with several medical conditions, including chronic obstructive pulmonary disease (COPD), a pinched back nerve that inhibits her ability to walk, and osteoarthritis. [ECF No. 1722 at 14; *see also* ECF No. 1722-2 at 3-6.] Defendant explains that his early release from prison would enable him to attend to his mother's needs, including helping her recover from a "necessary surgery." [ECF No. 1722 at 14.] Defendant also states that several deaths in his family, including the deaths of his father and a brother since Defendant has been incarcerated, make his mother's healthcare needs even more desperate. *Id*.

The United States Sentencing Commission provides that "Family Circumstances" may constitute an extraordinary and compelling reason for compassionate release in instances of "death or incapacitation of the caregiver of the defendant's *minor child or children*" or when "[t]he incapacitation of the defendant's *spouse or registered partner*" would leave the defendant their "only available caregiver." U.S.S.G. § 1B1.13(1)(C) (emphasis added). Some district courts have expanded the scope of family circumstances and granted compassionate release to inmates presumed to be the only potential caregiver for their ailing mothers. *See, e.g., United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019). Others have denied compassionate release on that same ground because "[m]any, if not all inmates, have aging and sick parents," *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019)).

The court has received medical records substantiating that Defendant's mother's serious medical conditions have left her incapacitated, and a letter from Defendant's mother, claiming that she has no one but Defendant to care for her. [*See* ECF No. 1722-2.] The court is sympathetic to Defendant's position and his mother's medical circumstances. At the same time, however, there are few other details to demonstrate that Defendant is the *only* available caregiver

despite deaths in the family during Defendant's period of incarceration. And, even if the court were to find these circumstances extraordinary and compelling, Defendant's § 3553(a) factors weigh against his release.

## V.     Defendant's statutory sentencing factors

In this case, the court cannot justify Defendant's compassionate release under the factors enumerated by Congress in 18 U.S.C. § 3553. First, the severity of the instant offense—conspiracy to possess with the intent to distribute and distribution of five kilograms or more of powder cocaine and a detectable quantity of marijuana—counsels the court against any relief. The drug-trafficking scheme Defendant was involved in occurred over a period of ten years and was incredibly dangerous; it involved a tremendous amount of drugs and sparked violence in and around the communities it impacted. [ECF No. 915 at 8 ¶ 14, 12-13 ¶ 30.] Defendant not only participated in the largescale operation by facilitating the sale of drugs, he also guided other members of the conspiracy in carrying out the scheme and benefited from the fruits of their crimes.[11] *See, e.g.*, *id*. at 10 ¶¶ 22-24, 14 ¶¶ 33-34; [*See also* ECF No. 962 at 285-86, 289-90, 311, 322-26; ECF No. 963 at 430-31, 436.] And the court attributed 41,678.23

---

[11] Although the government proffered evidence at trial that Defendant played a considerable role in advancing the drug-trafficking scheme, the court held, at sentencing, that there was insufficient evidence to support a three-level enhancement for an aggravating role as a "manager or supervisor" in the drug conspiracy under U.S.S.G. § 3B1.1(b). [ECF No. 915 at 69 (citing *United States v. Slade*, 631 F.3d 185, 190-91 (2011) (finding that the evidence did not establish that the defendant "actively exercised some authority over other participants in the operation or actively managed its activities," such as "by controlling or directing the terms of their sales," even though the defendant was a "mid- to upper-level" member of the conspiracy who "supplied large quantities of drugs to his clientele as well as co-conspirators, who, in turn, sold those drugs to their clientele", a co-conspirator chauffeured the defendant to various locations to deliver those drugs, and "various co-conspirators sold drugs 'for' [him]").]

kilograms of marijuana equivalent to Defendant, emphasizing his significant role in the drug-trafficking operation.[12] [ECF No. 915 at 13-14 ¶¶ 30-31; ECF No. 938 at 68.]

Second, Defendant's history and characteristics reveal Defendant's tendency toward violence, including threats he made to others during the commission of the present offense. In one such example, Defendant discharged a firearm "within inches" of where an alleged drug purchaser stood because Defendant believed the individual had stolen Defendant's money. [ECF No. 915 at 8-9 ¶ 17; ECF No. 962 at 315-17.] In another example, Defendant directed a co-conspirator to rob another drug purchaser. [ECF No. 962 at 322-23.] Furthermore, while Defendant was out on bond awaiting trial, an informant disclosed to a law enforcement agent that Defendant had put out a $5,000 hit on an unindicted co-conspirator. [ECF No. 915 at 14-15 ¶ 35, 26 ¶ 84.] Based on this serious allegation, Defendant's failure to appear in court for a pretrial conference and absconding from pretrial supervision for about three and a half to four months, the court revoked Defendant's bond and ultimately applied a two-level enhancement for obstructing justice. *Id*. at 6 ¶ 8, 14-15 ¶ 35; [ECF No. 938 at 69.] Defendant was also previously convicted of violent offenses, including abusive and threatening conduct toward women. [ECF No. 915 at 17 ¶ 44, 19 ¶¶ 49-50.]

Yet, Defendant's violent conduct occurred over twelve years ago, and, as the Supreme Court acknowledged in *Pepper v. United States*, a defendant's post-sentencing conduct "provides the most up-to-date picture of [their] 'history and characteristics.'" 562 U.S. 476, 492 (2011) (quoting 18 U.S.C. § 3553(a)(1)). The court is encouraged by the evidence of

---

[12] The U.S. Probation Office calculated 41,678.23 kilograms of marijuana equivalent based on: 1,258.3 grams of crack cocaine, 82,538.65 grams of powder cocaine, and 4.5 kilograms of marijuana. [*See* ECF No. 915 at 12-14 ¶¶ 30-31; ECF No. 1367 at 1 n.1.] In adopting the Probation Office's calculation of drug attribution to Defendant, the court relied on Defendant's own admissions and witnesses' trial testimony. [ECF No. 938 at 67-68.]

Defendant's rehabilitation through his pursuit of educational courses and vocational training and certification and impressed by the amount of support Defendant has presented from his family, friends, a potential future employer, and other inmates, advocating for his release. [*See* ECF Nos. 1722-1, 17-22-2, 1722-3, 1722-7, 1722-8, 1722-11.] Most impressive is Defendant's willingness to abandon his own safety in a high-security penitentiary to save the life of a correctional officer. [ECF No. 1710 at 1, ECF No. 1710-1 at 3-4, ECF No. 1722 at 1-2.] But the court recognizes that, before and after his lifesaving actions, Defendant committed multiple BOP infractions from 2012 to 2020. [ECF No. 1731 at 6-7.] As noted above, those infractions ranged from possessing a cell phone, and possessing materials indicative of a planned escape, to insolent behavior toward a staff member, all of which are significant violations that the court cannot overlook in its determination. *Id*.

Finally, the court reviews Defendant's sentence in consideration of "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). According to the most recent Sentencing Guidelines, Defendant would still face a sentencing range of 292 to 365 months if sentenced today. At 292 months, Defendant received a sentence at the low end of the Guidelines, and to date, he has only served about 148 months, just over half of his sentence. Thus, the court finds that neither Defendant's immediate release nor a sentence reduction would adequately reflect the need to avoid unwarranted sentence disparities, the seriousness of his criminal conduct, or afford adequate deterrence.

## CONCLUSION

For these reasons, the court **DENIES** Defendant's Motion for Compassionate Release. [ECF No. 1710.]

14

s/ Sherri A. Lydon
The Honorable Sherri A. Lydon
United States District Judge

Columbia, South Carolina
May 16, 2023